# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

BANK OF AMERICA, N.A., SUCCESSOR
BY MERGER TO BAC HOME LOANS
SERVICING, LP, FKA COUNTRYWIDE
HOME LOANS SERVICING, LP,

                Plaintiff,

    vs.

TRAVATA AND MONTAGE AT
SUMMERLIN CENTRE HOMEOWNERS'
ASSOCIATION, *et al.*,

                Defendants,
_____

SFR INVESTMENTS POOL 1, LLC, a
Nevada limited liability company,

            Counter/Cross-Claimant,

vs.

BANK OF AMERICA, N.A., *et al.*,

           Counter/Cross-Defendants.

Case No.: 2:16-cv-00699-GMN-PAL

**ORDER**

Pending before the Court is the Motion for Summary Judgment, (ECF No. 70), filed by SFR Investments Pool 1, LLC ("SFR"). Bank of America, N.A. ("Plaintiff") filed a Response, (ECF No. 79), and SFR filed a Reply, (ECF No. 88).

Also pending before the Court is Plaintiff's Motion for Summary Judgment, (ECF No. 69). SFR and Travata and Montage at Summerlin Centre Homeowners' Association ("HOA") filed Responses, (ECF Nos. 78, 82), and Plaintiff filed a Reply, (ECF No. 85).[1]

## I.    **BACKGROUND**

This case arises from the non-judicial foreclosure on real property located at 1960 Hollywell Street, Las Vegas, Nevada 89135 (the "Property"). (*See* Deed of Trust, Ex. A to Pl.'s Mot. Summ. J. ("MSJ"), ECF No. 69-1). In 2009, Phillip and Lorri Liebmann ("Borrowers") purchased the Property by way of a loan in the amount of $279,023.00, secured by a deed of trust (the "DOT"). (*Id.*). Plaintiff gained beneficial interest in the DOT through an assignment recorded on November 5, 2010. (*See* Assignment, Ex. D to Pl.'s MSJ, ECF No. 69-4).

Upon Borrowers' failure to stay current on their payment obligations, Nevada Association Services ("NAS"), on behalf of HOA, initiated foreclosure proceedings by recording a notice of delinquent assessment lien and a subsequent notice of default and election to sell. (*See* Notice of Delinquent Assessment Lien, Ex. I to Pl.'s MSJ, ECF No. 69-9); (Notice of Default, Ex. J to Pl.'s MSJ, ECF No. 69-10).

On September 9, 2011, the law firm Miles, Bauer, Bergstrom & Winters LLP ("Miles Bauer"), on behalf of Plaintiff, sent a letter to NAS requesting a ledger identifying the amount of HOA's superpriority lien. (*See* Request for Accounting at 6–9, Ex. 1 to Miles Aff., ECF No.

---

[1] Also pending before the Court is HOA's Motion for Summary Judgment, (ECF No. 71). On September 19, 2018, HOA reached a settlement with Plaintiff. (Min. Proceedings, ECF No. 98). The Court then granted HOA and Plaintiff's Stipulation to dismiss HOA. (Stip. Dismissal, ECF No. 104). Accordingly, HOA's Motion for Summary Judgment against Plaintiff is denied a moot.

Also pending before the Court is SFR's Motion to Strike, (ECF No. 109), which requests the Court to strike and disregard Plaintiff's Reply in Support of its Notice of Supplemental Authority, (ECF No. 108). Plaintiff's Notice of Supplemental Authority, (ECF No. 97), consisted of an attached Nevada Supreme Court decision and a two-page summary of the same. SFR filed a 24-page responsive brief, (ECF No. 107), addressing various arguments outside the scope of Plaintiff's supplement. The Court finds that considerations of fairness weigh in favor of allowing Plaintiff to address SFR's arguments. Accordingly, for good cause appearing, the Court will consider Plaintiff's Reply in Support of its Notice, (ECF No. 108), in addition to SFR's Response, (ECF No. 107); and thus, the Court denies SFR's Motion to Strike.

69-12). NAS responded with a ledger detailing the amount of HOA's lien. (*See* Statement of Account, Ex. 2 to Miles Aff., ECF No. 69-12). Miles Bauer, on behalf of BANA, subsequently delivered a check to NAS for $1,386.00, based on the provided ledger, purportedly representing nine months' worth of HOA assessments. (*See* Tender Letter, Ex. 3 to Miles Aff., ECF No. 69-12).

Notwithstanding the alleged tender, NAS proceeded with the foreclosure by recording a notice of foreclosure sale and subsequently foreclosing on the Property. (*See* Notice of Trustee's Sale, Ex. K to Pl.'s MSJ, ECF No. 69-11). On September 7, 2012, SFR recorded a foreclosure deed, stating that it purchased the Property for $9,200. (Foreclosure Deed, Ex. M to Pl.'s MSJ, ECF No. 69-13).

Plaintiff filed the instant Complaint on March 30, 2016, asserting the following causes of action arising from the foreclosure and subsequent sale of the Property: (1) quiet title; (2) breach of NRS 116.1113; (3) wrongful foreclosure; and (4) injunctive relief. (*See* Compl. ¶¶ 31–85). On June 13, 2016, SFR filed crossclaims and counterclaims against Plaintiff and Borrowers, respectively, for quiet title and injunctive relief. (*See* Answer 9:17–15:1, ECF No. 24).

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict

in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid

summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth; it is to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50.

## III. <u>DISCUSSION</u>

Plaintiff moves for summary judgment on its quiet title and declaratory relief claims, asserting that *Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 2296, 198 L.Ed.2d 726 (2017), compels the Court to hold that the HOA foreclosure sale did not extinguish Plaintiff's DOT. (Pl.'s MSJ 6:5–7:17, ECF No. 69). Plaintiff alternatively argues that summary judgment is warranted because Plaintiff properly tendered the superpriority HOA lien prior to the foreclosure sale, thus eliminating the superpriority status of the HOA's lien. (*Id.* 13:10–18:18).

SFR conversely seeks summary judgment on the basis that *Bourne Valley* is not controlling authority, Plaintiff lacks standing to assert its quiet title claim, Plaintiff's claims are barred by the statute of limitations, and Plaintiff is otherwise not entitled to an equitable remedy. (SFR's Mot. Summ. J. ("SFR's MSJ") 8:13–25:5, ECF No. 70). SFR also opposes Plaintiff's Motion by arguing, *inter alia*, that Plaintiff's purported tender did not satisfy HOA's superpriority lien, Plaintiff's tender contained impermissible conditions rendering it invalid, and SFR obtained the Property as a bona fide purchaser. (SFR's Resp. 17:9–26:14, ECF No.

82).  The Court's discussion below first addresses the applicable statute of limitations for Plaintiff's quiet title claim.

### A.    Statute of Limitations

Courts in this District, interpreting Nevada law, apply either a four or five-year limitations period to a lender's quiet title action, triggered by the HOA foreclosure sale or its recordation. *U.S. Bank Nat'l Ass'n v. SFR Invs. Pool 1, LLC*, No. 2:16-cv-00576-GMN-NJK, 2019 WL 303004, at *4 (D. Nev. Jan. 22, 2019); *Wilmington Tr., Nat'l Ass'n v. Royal Highlands St. & Landscape Maint. Corp.*, No. 2:18-cv-00245-JAD-PAL, 2018 WL 2741044, at *2 (D. Nev. June 6, 2018). *See also Saticoy Bay LLC Series 2021 Gray Eagle Way v. JPMorgan Chase Bank*, 388 P.3d 226, 232 (Nev. 2017); *Weeping Hollow Ave. Tr. v. Spencer*, 831 F.3d 1110, 1114 (9th Cir. 2016).  Moreover, a three-year statute of limitations under NRS 11.190(3)(a) does not apply to a lender's quiet title claim when the claim is substantively based on a court's equitable power to settle title disputes, rather than a wrongful-foreclosure tort claim for damages. *See Ocwen Loan Servicing, LLC v. SFR Investments Pool 1, LLC*, No. 2:17-cv-01757-JAD-VCF, 2018 WL 2292807, at *3 (D. Nev. May 18, 2018) (citing *Shadow Wood Homeowners Association, Inc. v. New York Community Bancorp*, 336 P.3d 1105 (Nev. 2016)).

Here, Plaintiff's quiet title claim against SFR focuses on the Court's equitable power to settle title disputes, evinced by Plaintiff's requests for relief in its quiet title claim of a declaration about the viability of its DOT. (*See* Compl. ¶¶ 2, 35, 63, ECF No. 1).  Plaintiff's quiet title claim is thus not governed by a three-year statute of limitations under N.R.S. 11.190(3)(a).  Since the foreclosure at the heart of this case occurred on August 10, 2012, and Plaintiff filed its Complaint roughly three years and eight months later, Plaintiff accordingly timely filed its quiet title claim. (*See* Compl. at 17, ECF No. 1) (filed on March 30, 2016).  The next issue, then, is whether the foreclosure constitutionally extinguished Plaintiff's lien on the Property.

**B. Constitutionality of the Foreclosure**

In *Bourne Valley*, the Ninth Circuit held that NRS 116.3116's notice provisions violated lenders' due process rights because the scheme "shifted the burden of ensuring adequate notice from the foreclosing homeowners' association to a mortgage lender." *Bourne Valley*, 832 F.3d at 1159. The Ninth Circuit, interpreting Nevada law, declined to embrace the appellant's argument that NRS 107.090, read into NRS 116.31168(1), mandates that HOAs provide notice to lenders even absent a request. *Id.* Accordingly, the absence of mandatory notice provisions rendered the statutory scheme facially unconstitutional. *Id.* at 1158–60.

*Bourne Valley*'s construction of Nevada law is "only binding in the absence of any subsequent indication from the [Nevada] courts that [the Ninth Circuit's] interpretation was incorrect." *Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983). "[W]here the reasoning or theory of . . . prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, [a court] should consider itself bound by the later controlling authority. . . ." *Miller v. Gammie*, 335 F.3d 889, 892–893 (9th Cir. 2003). "[A] [s]tate's highest court is the final judicial arbiter of the meaning of state statutes." *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006) (citing *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975) ); *see also Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th Cir. 1982) ("State courts have the final authority to interpret, and, where they see fit, to reinterpret the states' legislation.").

In *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, the Nevada Supreme Court expressly declined to follow *Bourne Valley* and held that NRS 107.090 is incorporated into NRS 116.31168, thus requiring that HOAs "provide foreclosure notices to all holders of subordinate interests, even when such persons or entities did not request notice." 422 P.3d 1248, 1253 (Nev. 2018) (en banc). The Nevada Supreme Court's holding is clearly irreconcilable with the Ninth Circuit's finding of unconstitutionality because the Ninth Circuit

premised its conclusion on NRS Chapter 116's lack of mandatory notice provisions. Because the Nevada Supreme Court has since interpreted NRS Chapter 116 as mandating notice, the rationale underlying the *Bourne Valley* decision no longer finds support under Nevada law. *See Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (recognizing that cases are "clearly irreconcilable" where the "relevant court of last resort ... undercut[s] the theory or reasoning underlying the prior circuit precedent."); *see e.g*, *Toghill v. Clarke*, 877 F.3d 547, 556–60 (4th Cir. 2017). Because the Nevada Supreme Court has final say on the meaning of Nevada statutes, *Bourne Valley* is no longer controlling authority with respect to NRS 116.3116's notice provisions and, consequently, its finding of facial unconstitutionality. Accordingly, to the extent Plaintiff, in the instant Motion, seeks to prevail based upon *Bourne Valley*, the Court rejects this theory.

## C.    Tender of the Superpriority Portion of HOA's Lien

Plaintiff claims that its tender of the superpriority amount of the HOA's lien to NAS renders the foreclosure sale invalid. (Pl.'s MSJ 13:11–16:26, ECF No. 69). Conversely, SFR argues that the Court must disregard Plaintiff's evidence of tender because such evidence is inadmissible under the Federal Rules of Evidence and improper under the Federal Rules of Civil Procedure. (SFR's Resp. 17:13–19:12, ECF No. 82). Specifically, SFR moves to exclude Plaintiff's exhibits and affidavit purporting to demonstrate evidence of tender (collectively the "Miles Bauer Records") on the grounds that the exhibits have not been properly authenticated and Plaintiff failed to identify the exhibits' affiant witness in its initial disclosures. (*Id.*).

### 1.   Admissibility of the Miles Bauer Records

SFR argues that Adam Kendis's affidavit (the "Kendis Affidavit") does not properly authenticate the Miles Bauer Records because Kendis cannot testify about his personal knowledge of how records were kept, whether he or Miles Bauer maintained control of the electronic records from the time they were produced, and whether the documents were

definitively not altered. (SFR's Resp. 17:13–19, ECF No. 82). Similarly, SFR argues that Kendis lacks personal knowledge of both the methods of delivery for tender letters and the actual delivery of the check to NAS. (*Id.* 17:17–19).

Under Federal Rule of Evidence 901(a), "[t]he foundational 'requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000) (quoting Fed. R. Evid. 901(a)). A party seeking admission of evidence need only establish a "prima facie showing of authenticity, as '[t]he rule requires only that the court admit evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification.'" *Id.* (quoting *United States v. Black*, 767 F.2d 1334, 1342 (9th Cir.1985)). Once this burden is met, questions concerning the accuracy or completeness of a given record affect its weight rather than its admissibility. *Id.*; *see also United States v. Catabran*, 836 F.2d 453, 458 (9th Cir. 1988).

"[A] proper foundation need not be established through personal knowledge but can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002). Rule 902(11) provides that "a domestic record that meets the requirements of Rule 803(6)(A)–(C)" is deemed to be self-authenticating. Fed. R. Civ. P. 902(11). In turn, Rule 803(6) provides that business records are admissible when two foundational facts are shown: "(1) the writing is made or transmitted by a person with knowledge at or near the time of the incident recorded, and (2) the record is kept in the course of regularly conducted business activity." *Sea-Land Serv., Inc. v. Lozen Int'l, LLC.*, 285 F.3d 808, 819 (9th Cir. 2002) (quoting *United States v. Miller*, 771 F.2d 1219, 1237 (9th Cir. 1985)); *see also* Fed. R. Evid. 803(6).

Here, the Court is satisfied that the Kendis Affidavit sufficiently authenticates the Miles Bauer Records. The Kendis Affidavit provides that Kendis is a paralegal with the firm Miles,

Bauer, Bergstrom & Winters, LLP, which was the firm hired to tender payment of the Property's superpriority lien; and that Kendis personally cross-referenced the information in the affidavit and exhibits with his firm's records to confirm the accuracy of the documents. (*See* Kendis Aff., Ex. L to Pl.'s MSJ, ECF No. 69-12). Kendis states he is familiar with Miles Bauer's record-keeping policies and that his job responsibilities require him to maintain records in connection with the tender payments to HOA in this case. (*Id.* ¶ 3). Additionally, each attached exhibit is identified in Kendis's sworn affidavit. (*Id.* ¶¶ 6–8). This is sufficient for a reasonable juror to find that the Miles Bauer Records are what Kendis claims them to be.

The Court rejects SFR's contention that Kendis's lack of personal knowledge precludes admission of the Affidavit. Rule 803(6) allows testimony from a "qualified witness," which has been "broadly interpreted to require only that the witness understand the record-keeping system." *Curley v. Wells Fargo & Co.*, 120 F. Supp. 3d 992, 998 (N.D. Cal. 2015) (quoting *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990)). That is, to meet the Ninth Circuit's "low bar" for serving as a "qualified witness," a witness need only have knowledge of the record-keeping procedures; a witness need not establish how or when a particular record was maintained. *See id.* ("There is no requirement that she or Wells Fargo establish when and by whom the documents were prepared."); *Ray*, 930 F.2d at 1370 ("[A]lthough Webber was not the custodian of Ray's welfare records, she was a 'qualified witness' to establish that Rule 803(6)'s foundational requirements had been met."); *United States v. Basey*, 613 F.2d 198, 201 n.1 (9th Cir. 1979) ("It is unimportant under Fed. R. Evid. 803(6) that the custodian did not herself record the information or know who recorded the information."). Moreover, where the custodial entity has a "substantial interest in the accuracy of the records," it does not matter that the records originated from another source. *See MRT Const. Inc. v. Hardrives, Inc.*, 158 F.3d 478, 483 (9th Cir. 1998); *United States v. Childs*, 5 F.3d 1328, 1334 n.3 (9th Cir. 1993) (distinguishing prior precedent and finding that "the auto dealers in this case did rely on [a

freight bill prepared by a different company] at issue and had a substantial interest in their accuracy.")); *Derderian v. Sw. & Pac. Specialty Fin., Inc.*, 673 F. App'x 736, 738 n.1 (9th Cir. 2016) ("It does not matter whether the records Li reviewed may have been given to her company by a third party; they may be admitted as the business records of her company even if they were generated elsewhere."); *see also United States v. Machinski*, No. 11-cv-01118-LB, 2017 WL 2617904, at *6 (N.D. Cal. June 16, 2017), *aff'd*, No. 17-16266, 2018 WL 6649595 (9th Cir. Dec. 18, 2018).

SFR cites *In re Vee Vinhee*, 336 B.R. 437 (B.A.P 9th Cir. 2005), for the proposition that electronic records must be authenticated by an affiant who testifies to the accuracy of the documents, identifies the chain of custody, and explains the circumstances of the document's preservation. (SFR's Resp. 17:25–11, ECF No. 82). To the extent *In re Vee Vinhee* may serve as persuasive authority, the Court is unpersuaded. *See In re Zimmer*, 313 F.3d 1220, 1225 n.3 (9th Cir. 2002) (stating "the binding nature of Bankruptcy Appellate Panel decisions" is "an open question in this circuit"); *In re Arnold*, 471 B.R. 578, 590 (Bankr. C.D. Cal. 2012); *In re Grant*, 423 B.R. 320, 321 (Bankr. S.D. Cal. 2010). It appears that the authentication requirements for business records in that case cannot be reconciled with more recent authority confirming the relatively lax requirements for admitting evidence under FRE 803(6). *See, e.g.*, *ABS Entm't, Inc. v. CBS Corp.*, 908 F.3d 405 (9th Cir. 2018) ("The business records exception only requires 'someone with knowledge' about the record-keeping, not necessarily an employee of the business or someone with knowledge of how the reports were made or maintained."); *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990); *Curley v. Wells Fargo & Co.*, 120 F. Supp. 3d 992, 998 (N.D. Cal. 2015).

Altogether, Kendis meets the requisite standards to authenticate the exhibits attached to the Affidavit. Likewise, Kendis holds the requisite personal knowledge to serve as a qualified witness under Rule 803(6) that can testify about Miles Bauer's record-keeping practices.

## 2. Failure to Disclose a Witness

Alongside the authenticity and personal knowledge arguments concerning the Kendis Affidavit, SFR argues that Plaintiff failed to identify Kendis as a witness in its initial disclosures. (SFR's Resp. 19:4–12, ECF No. 82). SFR argues that this failure to disclose then justifies exclusion of the Kendis Affidavit because it prejudices SFR's ability to conduct discovery on the issues raised in the Affidavit or controvert the statements made therein. (*Id.*).

Federal Rule of Civil Procedure 26(a)(1) governs initial disclosures. *See* Fed. R. Civ. P. 26(a). Rule 26(a)(1)(A)(i) requires parties to disclose the name of "each individual . . . that the disclosing party may use to support its claims or defenses" at the outset of a civil suit. Similarly, Rule 26(a)(1)(A)(ii) requires parties to disclose "a copy . . . of all documents . . . that the disclosing party . . . may use to support its claims or defenses." "Rule 37 'gives teeth' to Rule 26's disclosure requirements by forbidding the use at trial of any information that is not properly disclosed." *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (quoting *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)); Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) is a "self-executing," "automatic" sanction designed to provide a strong inducement for disclosure. *Yeti by Molly, Ltd.*, 259 F.3d at 1106 (quoting Fed. R. Civ. P. 37 advisory committee's note (1993)). "The only exceptions to Rule 37(c)(1)'s exclusion sanction apply if the failure to disclose is substantially justified or harmless." *Goodman*, 644 F.3d at 827; Fed. R. Civ. P. 37(c)(1).

To the extent Plaintiff violated Rule 26 by failing to disclose Kendis's name, the Court finds the omission is harmless. Notwithstanding Plaintiff's failure to identify Kendis by name, Plaintiff's disclosures put SFR on notice that a corporate representative of Miles Bauer would testify to Plaintiff's alleged tender of the superpriority amount. (*See* Pl.'s First Supplemental Disclosures 3:13–26, ECF No. 85-4). The first supplemental disclosure also expressly names the Miles Bauer Affidavit as a document on which Plaintiff intends to rely. (*Id.* 4:21–22). Even

before the parties exchanged initial disclosures, Plaintiff's Complaint alerted SFR of its theory of this case by repeatedly alleging that HOA, through NAS, rejected Plaintiff's tender. (*See* Compl. ¶¶ 26, 53, 54, 56). Finally, prior to this case being administratively stayed, (ECF No. 45), Plaintiff attached the same Miles Bauer Affidavit along with Kendis's declaration to its initial summary-judgment motion. (*See* Ex. H to Pl.'s Mot. Summ. J., ECF No. 43-8). Over a year later, once the Court lifted the stay, (ECF No. 53), the parties submitted a new proposed scheduling order and underwent additional discovery. (*See, e.g.*, Scheduling Order, ECF No. 55).

In short, SFR knew of Plaintiff's substantive legal theory at the outset of this case and has not been prejudiced by Plaintiff's evidence establishing the same. Moreover, because the Court's stay of this action resulted in SFR having access to the Miles Bauer Affidavit over a year before reentering discovery, SFR had ample opportunity to defend against this evidence. Accordingly, given the case's unique procedural history, any prejudice SFR suffered by Plaintiff's failure to disclose Kendis as a witness has been nullified. The Court will thus consider the Kendis Affidavit.

The Court now turns to whether there is any genuine issue of material fact that Plaintiff tendered the HOA superpriority amount prior to the Property's foreclosure.

### 3. Plaintiff's Tender of the Superpriority Lien Amount

Plaintiff argues that its payment for nine-months of common assessments constituted a valid and unconditional tender, thus extinguishing the HOA's superpriority lien. (Pl.'s MSJ 14:1–17:21, ECF No. 69). In response, SFR argues that Plaintiff's tender was invalid because the letter accompanying the payment contained impermissible conditions. (SFR's Resp. 19:14–21:8, ECF No. 82).

Under NRS 116.3116, the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing the deed of trust. *See*

*SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 414 (Nev. 2014). "[A] first deed of trust holder's unconditional tender of the superpriority amount due results in the buyer at foreclosure taking the property subject to the deed of trust." *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 116 (Nev. 2018) (en banc). "[T]he superpriority portion of an HOA lien includes only charges for maintenance and nuisance abatement, and nine months of unpaid assessments." *Id.* at 117. In addition to a full tender of the superpriority amount, "valid tender must be unconditional, or with conditions on which the tendering party has a right to insist." *Id.*

Here, the evidence indicates that on October 13, 2011, Miles Bauer, on behalf of Plaintiff, sent NAS a letter accompanied by a check for $1,386.00. (*See* Tender Letter, Ex. 3 to Kendis Aff., ECF No. 69-12). That is, pursuant to NAS's ledger identifying Borrower's delinquent payments, Plaintiff calculated nine months of assessments to be $594.00 but sent a check for 21 months' assessments totaling $1,386.00. (*Id.*); (Borrower Account History Report, Ex. 2 to Miles Bauer Aff., ECF No. 69-12). The accounting ledger confirms Plaintiff's calculation and does not reveal any nuisance and abatement charges. (*See* Borrower Account History Report, Ex. H to Reply, ECF No. 85-8). Thus, Plaintiff's tender of the $1,386.00 check to NAS undisputedly exceeded the amount of HOA's superpriority lien, and NAS received the check before rejecting it. (*See* Tender Letter, Ex. 3 to Kendis Aff.); (NAS's Confirmation of Receipt, Ex. 4 to Kendis Aff., ECF No. 69-12); (Screenshot of Case Management Note, Ex. 6 to Pl.'s MSJ, ECF No. 69-12).

SFR and HOA, in turn, have failed to produce competing evidence showing that Plaintiff miscalculated the superpriority lien amount, the lien included nuisance and abatement charges, or that Plaintiff never delivered the tender letter and accompanying check. The remaining question, therefore, is whether Plaintiff's tender was either unconditional or with conditions on which Plaintiff had the right to insist.

Plaintiff's Tender Letter, in relevant part, contains the following language:

> Our client has authorized us to make payment to you in the amount of $1,386.00 to satisfy its obligations to the HOA as a holder of the first deed of trust against the property. Thus, enclosed you will find a cashier's check made out to NEVADA ASSOCIATION SERVICES in the sum of $1,386.00. This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that BANA's financial obligations towards the HOA in regards to the real property located at 1960 Hollywell Street have now been "paid in full."

(Tender Letter, Ex. 3 to Kendis Aff., ECF No. 69-12).

SFR argues there is a disputed issue of material fact as to the tender's validity because the tender letter is impermissibly conditional. (*See* SFR's Resp. 20:11–15, ECF No. 82). SFR asserts that acceptance of the check was improperly contingent upon agreement with the facts as stated in the letter, including Plaintiff's legal interpretation that the check's amount represented payment in full. (*Id.* 20:23–21:8). Further, SFR contends that NAS's rejection of Plaintiff's payment was made in good faith given the fluidity of Nevada foreclosure law during the relevant time period. (*Id.* 23:3–24:6).

At the outset, the Court notes that one of the purportedly improper paragraphs in the tender letter is identical to the letter the Nevada Supreme Court deemed unconditional and otherwise valid.[2] Therefore, to the extent SFR assigns impropriety to language in that paragraph, the argument necessarily fails. Specifically, with respect to the provision that an endorsement would be construed as acceptance of the letter's facts, the Court incorporates the

---

[2] The tender letter before the Nevada Supreme Court contained the following paragraph:

> This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that [Bank of America]'s financial obligations towards the HOA in regards to the [property] have now been "paid in full."

*Bank of Am., NA.*, 427 P.3d at 118.

reasoning of the Nevada Supreme Court and finds this language constitutes a condition on which Plaintiff had the right to insist. *Bank of Am., NA.*, 427 P.3d at 117.

SFR argues, however, that this condition is "especially egregious" because Plaintiff "does not even acknowledge that an association has a superpriority portion of its lien for any amounts that constitute abatement charges." (*See* SRF's Resp. 20:13–15). According to SFR, because the letter omits any reference to abatement charges and expressly notes that the check applies solely to nine months of HOA assessments, acceptance of the tender would force HOA to waive a portion of its superpriority lien. (*Id.* 20:27–21:5).

In this case, because there is no genuine dispute that maintenance and abatement charges were not incurred during the relevant time period, acceptance of the letter's facts in this regard would not "force the association to waive a portion of its superpriority lien" as SFR urges. (*See* SFR's Resp. 21:4). On this point, SFR contends that it is irrelevant whether abatement charges were assessed because these charges "can arise at any time during the delinquency process," and such charges "are not temporally limited." (*Id.* 20:27–21:5 n.10). However, SFR does not provide evidence of abatement charges owed during the delinquency process in this matter. (*See id.*).

Last, SFR argues that NAS's rejection was in good faith because Nevada foreclosure law during the relevant time period "was unsettled as to what amounts were included in the superpriority portion of the lien." (*Id.* 23:3–11). Additionally, SFR argues that the letter's language appears to "absolve [Plaintiff] from any future payments in the event it obtained title," and Plaintiff would never again be obligated to make any payments towards the Property. (*Id.* 23:12–18).

With respect to SFR's arguments concerning legal uncertainty, the Court finds these contentions unpersuasive. An HOA's subjective belief and lack of bad faith are "legally irrelevant," because a valid tender satisfies "the default as to the superpriority portion of the

HOA's lien by operation of law." *Pawlik v. Bank of New York Mellon*, No. 71681, 2018 WL 6617724, at *1 (Nev. Dec. 11, 2018) (unpublished); *Sage Realty LLC Series 2 v. Bank of New York Mellon*, No. 73735, 2018 WL 6617730, at *1 (Nev. Dec. 11, 2018) (unpublished). Moreover, responding to this same line of argument, the Nevada Supreme Court stated "a plain reading of NRS 116.3116 indicates that at the time of Bank of America's [2012] tender, tender of the superpriority amount by the first deed of trust holder was sufficient to satisfy that portion of the lien. Thus, the issue was not undecided." *Bank of Am.*, 427 P.3d at 118. In a prior opinion, the Nevada Supreme Court arrived at the same conclusion explaining "we are not persuaded that this was a justifiable basis [for rejection] in light of the explanations contained in the letters sent by [plaintiff's] agent setting forth [plaintiff's] legal position." *BAC Home Loans Servicing, LP v. Aspinwall Court Tr.*, No. 69885, 422 P.3d 709, 2018 WL 3544962, at *1 (Nev. July 20, 2018) (unpublished).

Based upon this authority, the Court finds that the purported unsettled nature of Nevada law during the relevant time period does not establish sufficient justification for rejection of Plaintiff's tender. This conclusion is bolstered by the fact that Plaintiff's tender letter, as well as the preceding letter requesting an accounting, provided explanation of Plaintiff's legal position, as well as citations to pertinent statutory authority. (*See* Request for Accounting, Ex. 1 to Kendis Aff, ECF No. 69-12); (*see also* Tender Letter, Ex. 3 to Kendis Aff., ECF No. 69-12).

Finally, the Court rejects SFR's argument that NAS rejected the tender in good faith because the tender letter purports to absolve Plaintiff of any future liability it may have to HOA. The Court is in accord with the Nevada Supreme Court that the letter's reference to "facts stated herein," immediately preceding the language about Plaintiff's obligations being "paid in full," can only be reasonably interpreted as applying to the underlying foreclosure proceeding. *See Sage Realty*, 2018 WL 6617730, at *1 ("The letter refers to 'the facts stated herein,' which can only be reasonably construed as contemplating the underlying foreclosure

proceeding and not a future scenario in which BNYM might again need to cure a default as to the superpriority portion of the HOA's lien to protect its first deed of trust."); *Deutsche Bank Nat'l Tr. Co. v. Premier One Holdings, Inc.*, 431 P.3d 55 (Nev. 2018) (unpublished) (same); *Fiducial, LLC v. Bank of New York Mellon Corp.*, No. 71864, 2018 WL 6617727, at *2 (Nev. Dec. 11, 2018) (same).

### 4. SFR's Status as a Bona Fide Purchaser

Because Plaintiff satisfied the HOA superpriority lien, SFR cannot prevail even if the Court were to find it was a bona fide purchaser for value. "A foreclosure sale on a mortgage lien after valid tender satisfies that lien is void, as the lien is no longer in default." *See Bank of Am., N.A. v. SFR Invs. Pool 1*, LLC, 427 P.3d 113, 121 (2018) ("Because a trustee has no power to convey an interest in land securing a note or other obligation that is not in default, a purchaser at a foreclosure sale of that lien does not acquire title to that property interest."). Accordingly, in light of Plaintiff's tender, SFR's status as a bona fide purchaser is immaterial.

Based upon the foregoing, the Court concludes that Plaintiff's tender satisfied HOA's superpriority lien and thus invalidated the ensuing sale to the extent it extinguished Plaintiff's DOT. While the sale remains intact, Plaintiff's DOT continues to encumber the Property and SFR's interest is subject to this encumbrance. Accordingly, Plaintiff's Motion for Summary Judgment, as to its quiet title claim, is granted. The Court denies SFR's Motion with respect to its quiet title claim against Plaintiff.

### D. Standing to Enforce the DOT

In addition to finding that the DOT continues to encumber the Property, Plaintiff has standing to assert its quiet title claim. That is, SFR argues that Plaintiff does not have standing to enforce the DOT because Plaintiff does not provide proof that the promissory note *and* DOT were transferred to Plaintiff, and does not provide the original writing or certified copy showing the chain of ownership for the note and DOT. (SFR's Resp. 7:8–11:8, ECF No. 82).

To the extent SFR argues that Plaintiff lacks standing to enforce the DOT because it has not produced evidence that the promissory note was endorsed in Plaintiff's favor, the Court disagrees. (*See* Resp. 7:17–8:8, ECF No. 82) (citing *Edelstein v. Bank of New York Mellon*, 286 P.3d 249 (Nev. 2012). SFR's reliance on *Edelstein*, which dealt with authority to foreclose, is misplaced. *See* 286 P.3d at 255. Rather than seeking authority to foreclose on the Property, Plaintiff seeks to quiet title in its favor. (Compl. ¶¶ 31–64). It is well established that an action to quiet title "may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013). Indeed, Plaintiff seeks to determine the viability of its interest against SFR through the DOT alone. (Resp. 12:21–22, ECF No. 85). Similarly, Plaintiff provides documentation showing its chain of title regarding that DOT. (Assignment Recorded, Ex. D. to Pl.'s MSJ, ECF No. 69-4) (showing a transfer to "BAC Home Loans Servicing, LP FKA Countrywide Home Loan Servicing, LP); (Cert. Merger, Ex. E to Pl.'s MSJ, ECF No. 69-5) (showing a merger of BAC Home Loans Servicing with Bank of America, N.A.).

Because SFR does not produce evidence to rebut the chain of title for the DOT in this case, there is no dispute of material fact about Plaintiff's assigned interest here. Plaintiff thus has articulated its chain of title, provided proper documentation, and has standing to pursue its quiet title claim. *See USROF IV Legal Title 2015-1 by U.S. Bank Nat'l Ass'n v. White Lake Ranch Ass'n*, No. 3:15-cv-00477-MMD-CBC, 2019 WL 539037, at *3 (D. Nev. Feb. 11, 2019) ("[T]he Court finds that as the holder of the DOT . . . [the holder] has standing to challenge the HOA Sale and to contend that the DOT has not been extinguished.").

### E. SFR's Quiet Title Claim Against Borrowers

SFR seeks summary judgment on its quiet title claim against Borrowers on the basis that "it obtained title of the unit's owner without equity or right of redemption" by purchasing the

Property. (SFR's MSJ 25:7–12, ECF No. 70). Because the Court holds that the sale remains intact, and given SFR's evidence of its interest in the Property relative to that of Borrowers', SFR's Motion against Borrowers is granted to the extent Borrowers assert any adverse interest in the Property. *See Bank of Am., N.A. v. Falcon Point Ass'n*, No. 216-cv-00814-GMN-CWH, 2018 WL 4682317, at \*8 (D. Nev. Sept. 28, 2018); *Deutsche Bank Nat'l Tr. Co. v. Foothills at S. Highlands Homeowners Ass'n*, No. 2:16-cv-00245-GMN-PAL, 2018 WL 3613984, at \*5 (D. Nev. July 27, 2018).[3]

### F.   Plaintiff's Wrongful Foreclosure and Injunctive Relief Claims

In its prayer for relief, Plaintiff requests primarily an order declaring that "SFR purchased the property subject to [Plaintiff's] senior deed of trust." (*See* Compl. 16:14–16, ECF No. 1). The other relief requested—with the exception of injunctive relief—is phrased in the alternative. (*See id.* 16:17–21). Therefore, because the Court grants summary judgment for Plaintiff on its quiet title claim, Plaintiff has received the relief it requested. The Court accordingly dismisses Plaintiff's wrongful foreclosure claim as moot. As to Plaintiff's request for a preliminary injunction pending a determination by the Court concerning the parties' respective rights and interests, the Court's grant of summary judgment for Plaintiff moots this claim and is therefore dismissed.

## IV.   <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 69), is **GRANTED** pursuant to the foregoing.

**IT IS FURTHER ORDERED** that SFR's Motion for Summary Judgment, (ECF No. 70), is **GRANTED in part** and **DENIED in part**. SFR's Motion, with respect to its quiet title

---

[3] As Borrowers have not appeared in this action, SFR moved for clerk's entry of default, (ECF Nos. 67, 68), which the clerk of court subsequently entered, (ECF Nos. 72, 73).

claim against Borrowers, is **GRANTED**. SFR's Motion is **DENIED** with respect to its quiet title claim against Plaintiff.

**IT IS FURTHER ORDERED** that HOA's Motion for Summary Judgment, (ECF No. 71), is **DENIED as moot**.

**IT IS FURTHER ORDERED** that SFR's Motion to Strike, (ECF No. 109), is **DENIED**.

The Clerk of Court shall enter judgment accordingly and close the case.

**DATED** this __11__ day of March, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Court